IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FLORIDA VIRTUAL SCHOOL,

      Plaintiff,

v.                    CASE NO:_____

D2L CORPORATION, a foreign
corporation, and D2L LIMITED,
a Maryland limited corporation,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Florida Virtual School, sues Defendants, D2L Corporation ("D2L Corp.") and D2L, Ltd. (together with D2L Corp., "D2L"), and states as follows:

## INTRODUCTION

1. This is an action for damages in excess of $75,000, exclusive of attorney's fees and costs, and for declaratory and other equitable relief.

## THE PARTIES

2. Florida Virtual School ("FLVS") is a public agency of the State of Florida. § 1002.37, Fla. Stat. FLVS is a citizen of the State of Florida pursuant to 28 U.S.C. § 1332 and has its principal place of business in Orlando, Florida. Founded in 1997, FLVS was the country's first state-wide, Internet-based public high school. Today, FLVS provides remote, online instruction to students from Kindergarten through High School and provides a variety of custom solutions for schools and districts to meet student needs.

3. Defendant, D2L Corp., is a foreign business entity incorporated under the laws of Canada engaged in the production of technology used to deliver remote instruction to students, including students in Florida. D2L Corp. is a citizen of Canada, a foreign state as defined under 28 U.S.C. § 1603, pursuant to 28 U.S.C. § 1332. D2L Corp. maintains its principal place of business in Kitchener, Ontario, Canada,

4. Defendant, D2L Ltd., is a business entity incorporated under the laws of the State of Maryland engaged in the production of technology used to deliver remote instruction to students, including students in Florida. D2L Ltd. is a citizen of the State of Maryland pursuant to 28 U.S.C. § 1332. D2L Ltd. maintains its principal place of business in Towson, Maryland.

## JURISDICTION AND VENUE

5. This action is a case or controversy as defined under 28 U.S.C. § 2201.

6. This action meets the diversity of citizenship requirements set forth by 28 U.S.C. § 1332 because the parties are citizens of and have principal places of business located in different/foreign states.

7. This action meets the threshold for the amount in controversy, pursuant to 28 U.S.C. § 1332.

8. Venue is proper in this Court because the underlying conduct and execution of the purported contracts forming the basis of this action took place in Orange County, Florida, which is within the geographical territory of the United States District Court, Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391. Further, because FLVS is an agency of the State of Florida and is headquartered in

Orlando, Florida, venue in this Court is appropriate on the basis of its home venue privilege.

## FACTS COMMON TO ALL COUNTS

9. FLVS is a component of Florida's public education system and provides full-time and part-time online instruction to hundreds of thousands of students throughout Florida.

10. Among other things, FLVS develops (and utilizes) state-of-the-art educational courseware and technological platforms needed to deliver high-quality instruction and to continually assess the needs and academic growth of its students.

11. Like any other public school system in the State of Florida, FLVS is publicly-funded and participates in the Florida Education Finance Program.

12. FLVS is a public agency of the State of Florida and is entitled to sovereign immunity. *See* § 1002.37, Fla. Stat.

13. FLVS is governed by a Board of Trustees (the "Board") whose members are appointed by the Florida Governor.

14. In large part, the Board governs FLVS through the development and adoption of organization-wide policies ("Board Policies"), certain of which pertain to the agency's procurement of goods and services.

15. For instance, Board Policies provide that contractual services valued at more than $50,000 per fiscal year shall be put to competitive solicitation.  Further, they provide that formal Board approval and authorization is required before FLVS officials enter into any contract valued at more than $100,000 per fiscal year.  A true and accurate

copy of Board Policy F004 and F011 are attached hereto and incorporated by reference as **Composite Exhibit 1**.

16. In May 2016, FLVS issued an Invitation to Negotiate ("ITN") to procure a provider for an online Learning Management System ("LMS") service/platform.

17. An LMS is comprised of proprietary software and service applications which facilitate the administration, documentation, tracking, reporting, automation, and delivery of online educational content. In essence, an LMS functions as a "virtual" schoolhouse—including its "virtual" administrative offices.

18. Pursuant to Board Policy, FLVS selected D2L Corp. as the winning bidder to provide LMS services and entered into an LMS Master Service Agreement with D2L Corp. (the "Agreement") on July 25, 2016. A true and accurate copy of the Agreement is attached hereto and incorporated herein by reference as **Exhibit 2**.

19. On August 26, 2016, FLVS and D2L Corp. executed an Amendment to the Agreement authorizing its assignment by D2L Corp. to D2L Ltd. A true and accurate copy of the Amendment to the Agreement is attached hereto and incorporated by reference as **Exhibit 3**.

20. In the pursuing months, D2L's LMS—known as "Brightspace"—presented a series of significant problems and deficiencies which were reported and/or otherwise known to D2L which went uncured. In light of these and other deficiencies which persisted without cure, FLVS terminated the Agreement with notice to D2L in May 2017. A written notification of said termination is attached and incorporated by reference herein as **Exhibit 4.**

21. At no time after the termination of the Agreement did any party engage in the requisite public procurement process such that any FLVS official or representative would be authorized to purchase an LMS—from D2L or any other entity, for that matter.

22. Nevertheless, on or about September 11, 2018, a purported "First Amendment" to the *terminated* Agreement was executed by D2L and FLVS's then-Interim Executive Director, Dr. Robert Porter (hereinafter the "Unauthorized Agreement"). A true and correct copy of the Unauthorized Agreement is attached and incorporated by reference herein as **Exhibit 5.**

23. The Unauthorized Agreement purported to reinstate—and dramatically amend—the terminated Agreement. For instance, the Unauthorized Agreement vastly curtailed the termination rights accorded to FLVS under the Agreement, and increased the value of FLVS's installment payments to D2L (totaling more than $10 million dollars over the purported 5-year term). Moreover, the LMS product and deliverables contemplated by the Unauthorized Agreement were far different from those set out in the terminated Agreement and diverged from the actual needs of FLVS and its students..

24. The Unauthorized Agreement also purported to reinstate other nonsensical provisions of the terminated Agreement. For instance, one such "reinstated" provision required FLVS's payment for D2L services which FLVS previously determined to be inadequate.

25. On or about March 26, 2020, FLVS advised D2L that FLVS considered the Unauthorized Agreement void. Out of an abundance of caution, FLVS also (and

alternatively) provided to D2L written notice of FLVS's termination of the Unauthorized Agreement. *See* letter attached and incorporated by reference herein as **Exhibit 6**.

26. D2L disputes FLVS's assertion that the Unauthorized Agreement is void. D2L also disputes the validity and enforceability of FLVS's notice of termination because it was not accompanied by FLVS's payment of approximately $2.9 million dollars—the amount purportedly "due" and owing to D2L for the third year (2020-2021) of the 5-year Unauthorized Agreement.

27. D2L's LMS serves no useful purpose for FLVS. At bottom, the LMS does not fit FLVS's educational model and does not meet the needs of either FLVS or its students.

28. Despite these concerns, and FLVS's protestation that the Unauthorized Agreement was not properly procured in the first place, D2L insists that FLVS is bound by each and every term of the Unauthorized Agreement. Frankly stated, D2L therefore insists that FLVS—and Florida taxpayers—must pay millions of public dollars to D2L over the course of years for the "right" to use an LMS which suffers numerous shortcomings of its own and clearly does not fit the needs of FLVS or the students that it serves.

## COUNT I
### (Declaratory Judgment – Void Ab Initio)

29. FLVS realleges and incorporates paragraphs 1-28, as if set forth fully herein.

30. As a state agency, FLVS is required to adhere to specific and defined procedures regarding the procurement of services to the public.

31. Among said requirements is that FLVS submit public solicitations seeking proposals to render requested services, and that the awarding of a contract agreeing to the performance and payment related to said services be granted by the agency's governing body at a public meeting.

32. One of the preambles to the Unauthorized Agreement asserts that FLVS agreed to "the reinstatement" of the terminated Agreement.

33. Because the Agreement was terminated, Florida law and Board Policy mandated that the LMS purchase contemplated by the Unauthorized Agreement—the value of which far exceeded the spending authority of any FLVS official or representative absent Board approval—was put to formal competitive solicitation processes set out by Florida law and Board Policy.

34. The Unauthorized Agreement, which purported to "amend" and "reinstate" a terminated Agreement, was never put to any form of competitive solicitation—formal or informal.

35. The Unauthorized Agreement does not purport to procure services from the Defendant(s) under an exception set forth by law or Board Policy.

36. Binding FLVS to an Unauthorized Agreement which purported to "reinstate" a terminated contract and which jettisoned both Board Policy and Florida law is repugnant to public policy and Florida law.

37. Even if D2L could have "reinstated" a terminated contract without complying with Florida law related to public procurement procedures, the Board did not authorize FLVS's former Interim Executive Director to enter into the Unauthorized

Agreement—one that substantially changed not only FLVS's rights, but even the nature of D2L's product and services. Indeed, D2L's LMS and related scope of services contemplated in the original (though terminated) Agreement were substantially different than those contained in the Unauthorized Agreement.

38. Because it departed from procurement processes required by Florida law and Board Policy, and was not otherwise approved by the Board in accordance with Florida law or Board Policy, the Unauthorized Agreement is a nullity and void ab initio.

39. Due to its voidness, FLVS is not bound by any of the terms or obligations purportedly imposed by the Unauthorized Agreement.

40. D2L disputes that the Unauthorized Agreement is null and void.

WHEREFORE, FLVS seeks a declaration in its favor from the Court declaring that the Unauthorized Agreement is null and void; declaring that FLVS is entitled to repayment of all sums paid to D2L under the void Unauthorized Agreement; declaring that FLVS is entitled to any additional relief that the Court deems proper and appropriate, including the recovery of its attorneys' fees and costs incurred in pursuing this action; and awarding such other relief as this Court deems proper.

## COUNT II
### (Declaratory Judgment – Voidable)

41. FLVS realleges and incorporates paragraphs 1-28 as if fully set forth herein.

42. To the extent that the Unauthorized Agreement qualifies as an express, written contract to which FLVS is bound, Florida law and public policy render the Unauthorized Agreement voidable and unenforceable.

43. FLVS is an agency of the State of Florida, the operation of which is financed by public tax funds intended to benefit Florida taxpayers—specifically, Florida's K12 public school students and their families.

44. FLVS is responsible for the prudent utilization of public funds.

45. The Unauthorized Agreement purports to obligate FLVS to pay D2L Ltd. for inadequate LMS products and services which FLVS will never use, thereby constituting a waste of public tax dollars.

46. Further, D2L takes the position that the Unauthorized Agreement prohibits the utilization of the Agreement's "termination for convenience" clause.

47. The ability for public agencies and their governing bodies to terminate contracts allows public agencies and their governing bodies to properly respond and adjust to changed circumstances (including societal and market changes) such that they may act and administer public resources in a manner that best serves public welfare. The ability to terminate contracts also protects against expenditure of limited public funds and resources for goods and services that are imprudent, unnecessary, and/or frivolous.

48. Even if the Unauthorized Agreement was properly approved and authorized by law and Board Policy, FLVS should not be bound by the obligations and terms purportedly imposed by the Unauthorized Agreement where, as here, it would result in waste and otherwise offend public policy.

49. Courts are empowered to declare such contractual obligations void and unenforceable to the extent that they are unsupported by law, repugnant to public policy, or otherwise offend basic notions of equity and fundamental fairness.

WHEREFORE, FLVS seeks a declaration in its favor from the Court declaring that the Unauthorized Agreement is null and void; declaring that FLVS is entitled to repayment of all sums paid to D2L under the void Unauthorized Agreement; declaring that FLVS is entitled to any additional relief that the Court deems proper and appropriate, including the recovery of its attorneys' fees and costs incurred in pursuing this action; and awarding such other relief as this Court deems proper.

Dated:  September 29, 2020.

Respectfully Submitted:

*s/ Robert W. Thielhelm, Jr.*
Robert W. Thielhelm, Jr., Esq.
Florida Bar No. 889679
Lindy K. Keown, Esq.
Florida Bar No. 117888
Baker & Hostetler LLP
200 S. Orange Ave., Suite 2300
Orlando, FL 32801
Telephone:  407-649-4000
Facsimile:  407-841-0168
Email:  rthielhelm@bakerlaw.com
Email:  lkeown@bakerlaw.com
Attorneys for Plaintiff